**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| YEHONATAN KAPACH, individually,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 3:26-cv-00628-MOC-MTO |

# REPLY BRIEF IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

## I. INTRODUCTION

Defendant Google LLC ("***Google***") respectfully submits this reply brief in further support of its Motion to Dismiss Plaintiff's First Amended Verified Complaint (ECF No. 8, "***FAC***") (ECF No. 13, "***Motion to Dismiss***") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's Opposition (ECF No. 15, "***Opposition***" or "***Opp.***") confirms that the FAC should be dismissed with prejudice. ***First***, Plaintiff lacks standing because his claimed damages flow entirely from the suspension of a Google Business Profile that he created and operated for the benefit of his LLC, not for himself individually. ***Second***, Section 230 of the Communications Decency Act bars this action because Plaintiff cannot identify any specific, individualized promise by Google that would strip it of immunity for its content-moderation decisions, and the narrow exception recognized in *Barnes* and *Calise* does not apply where, as here, Google expressly reserved its discretion over what content to publish. ***Third***, the First Amendment separately bars each claim, as Plaintiff concedes for all but his promissory estoppel claim, because Google's

decisions about what to publish on its platform are protected editorial choices under *Moody*. ***Fourth***, Plaintiff's breach of contract claim fails because none of the contractual provisions Plaintiff now identifies actually impose the obligations he claims Google breached, and the related implied covenant and promissory estoppel claims fail for the same reasons and because they merely repackage the contract claim. ***Finally***, Plaintiff's statutory claims under the North Carolina Unfair and Deceptive Trade Practices Act and California's Unfair Competition Law fail because they rest on the same conduct underlying the deficient contract claim and on conclusory allegations that do not satisfy the applicable pleading standards. Because further amendment would be futile, the Court should dismiss the FAC in its entirety, with prejudice.

## II. PLAINTIFF LACKS STANDING TO BRING THIS ACTION.

Plaintiff simply repackages the allegations in the FAC to argue he has standing to bring this action. He does not. The FAC clearly establishes that "the commercial relationship at issue began in or about September 2023 when the locksmith operation that Plaintiff owned and personally operated began using Google's paid Local Services Ads and related verification services." (FAC, ¶ 3.) While Plaintiff again attempts to evade his lack of standing by stating he "sues individually and seeks no entity's damages" (Opp., p. 3), Plaintiff cannot evade the fact that all of Plaintiff's supposed damages flow from the alleged suspension of a Google Business Profile that Plaintiff alleges and concedes was set-up and created "for the benefit of [Plaintiff's] business[.]" (FAC, ¶ 19.) As such, Plaintiff is improperly attempting to assert claims for alleged harm to the LLC, which he lacks standing to. This action should therefore be dismissed for lack of standing under Rule 12(b)(1). *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at*

*Broadlands, LLC*, 713 F.3d 175, 185, n.4 (4th Cir. 2013); *McClain v. Causey*, 2021 WL 111496, *3, *7 (M.D.N.C. Jan. 12, 2021).[1]

## III. THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM.

### A. Section 230 of the Communications Decency Act Bars This Action.

Plaintiff attempts to invoke the extremely limited exception to CDA immunity for a specific, enforceable promise by an interactive computer service provider that is independent of its status or conduct as a publisher or speaker, relying on *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), and *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024). (Opp., pp. 9-10.) However, neither *Barnes* nor *Calise* save Plaintiff's claims from dismissal.

In *Barnes*, the Ninth Circuit found a viable promissory estoppel claim only because Yahoo's Director of Communications spoke directly with the plaintiff, and made a specific, individualized promise to take down the sexually explicit content of the plaintiff posted on Yahoo's website by her ex-boyfriend, but then Yahoo did not do so. 570 F.3d at 1098-99, 1107-09. The Ninth Circuit found this promise was separate and distinct from Yahoo's general content moderation policies—which could not be the basis of liability given the CDA—and constituted a waiver of Yahoo's CDA immunity. *Id.* at 1108-09. The Ninth Circuit found a similar limited waiver in *Calise*, where Meta made a specific promise to users in its terms of service that it would "'[c]ombat harmful conduct' … includ[ing] removing any 'content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property'" and prohibited deceptive or misleading ads, but then knowingly solicited such ads. 103 F.4th at 736-

---

[1] While Plaintiff appears to argue that the "remedy Google requests is unavailable on this ground" because a dismissal for lack of standing "must be without prejudice[,]" Google's Motion to Dismiss did not request dismissal with prejudice for lack of standing. (*See* ECF No. 13, pp. 9-10.) Standing is indisputably a basis for the Court to dismiss Plaintiff's claims. *See McClain*, 2021 WL 111496, at *7.

37, 742-43. Hence, both *Barnes* and *Calise* involved specific promises to remove or block specific content.

Plaintiff's claims here, however, do not involve the same type of specific and individualized promise to Plaintiff that could constitute a waiver of Google's CDA immunity. To the contrary, Google made no contractual promise to perpetually publish and never remove Plaintiff's GBP listing or content thereon, nor any of the promises the Opposition asserts from Plaintiff's misreading of the Contracts[2]. (Motion, pp. 19-22.) Indeed, as explained below, even the purported obligations the Opposition invokes do not require Google to provide any particular explanation or form of review before suspending a GBP listing. At most, Plaintiff is asserting generalized statements related to content moderation and account suspension, which *Barnes* itself makes clear, and subsequent decisions confirm, cannot strip Google of its CDA immunity. *See Barnes*, 570 F.3d at 1108 ("general monitoring policy, or even an attempt to help a particular person … does not suffice for contract liability"); *accord Doe v. Grindr Inc.*, 128 F.4th 1148, 1155 (9th Cir. 2025) (general statement that app "designed to create a safe and secure environment for its users" not a specific, enforceable promise like in *Barnes*, but "a description of its moderation policy" protected by Section 230); *Estate of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1178-79 (9th Cir. 2024) (general representations about anonymity and safety features not the kind of individualized promise needed under *Barnes*); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1198-1202 (N.D. Cal. 2009) (Section 230 barred contract claim because it rested "not on any promise, but on a general [content] policy," a theory of liability "*Barnes* expressly precludes");

[2] The Contracts include, as in the Motion to Dismiss, the Google Terms of Service ("***TOS***"), the Google Business Profile Additional Terms of Service ("***Additional GBP TOS***"), the Google LLC Advertising Program Terms ("***Advertising TOS***"), the Local Services Additional Terms for Providers ("***Additional Local Services TOS***"), the Local Services Ads requirements (***Local Service Policies***"), the Advanced Verification terms of service ("***VB Additional TOS***"), and the Advanced Verification policies ("***VB Policies***").

*Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29-31 (2021) (rejecting plaintiff's argument that Section 230 does not apply because they sought to hold defendant liable for its "own promises and representations" in its terms of service, rather than for removing third-party content, because "a general monitoring policy … does not suffice for contract liability").

The narrow exception in *Barnes* and *Calise* also cannot apply here because Google has expressly reserved its contractual discretion to decide what content to publish or not publish, and what content to remove. (Additional GBP TOS, ECF 13-5, p. 3.) Hence, Google has not "agreed to limit its exercise of editorial discretion according to bargained-for terms and conditions," and therefore retains its full immunity from all of Plaintiff's claims under the CDA. *See Prager Univ. v. Google LLC*, 85 Cal.App.5th 1022, 1035, 1037-39 (2022) (explaining the limitation on the *Barnes* exception, and finding the CDA barred contract and implied covenant claims based on Google's terms of service for YouTube, which reserved Google's discretion to remove content).

In sum, regardless of the legal theories asserted, all of Plaintiff's claims seek to hold Google liable for its decisions as to whether or not to publish Plaintiff's GBP page. Accordingly, the CDA bars the FAC. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) ("Any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").[3]

### B. The First Amendment Bars This Action.

[3] Plaintiff's conclusory statement that "no third-party content is the subject" of any claim should be ignored. (Opp., p. 10.) The FAC makes clear that each of Plaintiff's claims is based on Google's alleged removal of his GBP page, and Plaintiff's GBP page (and any third-party reviews thereon) and Plaintiff's ads published via the LSA service are all content "provided by another information content provider." *E.g.*, *Daniloff v. Google, LLC*, 2023 WL 1103648, *3 (D. Or. Jan. 30, 2023) (review on Plaintiff's GBP page not content created or provided by Google); *Lewis v. Google, Inc.*, 2021 WL 211495, *1-2 (W.D. Pa. Jan. 21, 2021) (same); *Black v. Google, Inc.*, 2010 WL 3222147, *1-2 (N.D. Cal. Aug. 13, 2010) (CDA barred claim based on anonymous comment posted to plaintiff's GBP page). (*See* FAC ¶¶ 46, 60, 66-67, 70-71, 75-76, 81.)

The Opposition effectively concedes that the First Amendment bars each claim except the promissory estoppel claim. (Opp., p. 11.) Plaintiff points to *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669-72 (1991) to argue that the First Amendment does not bar a promissory estoppel cause of action against a publisher. (Opp., p. 11.) *Cohen*, however, dealt with a "newspaper's breach of a promise of confidentiality given to the plaintiff in exchange for information." *Cohen*, 501 U.S. at 664. That is not the case here. Instead, Plaintiff's claims each compel Google to publish his preferred speech (*i.e.*, to continuously publish Plaintiff's GBP page or his ads for his LLC's local services), and Plaintiff cannot distinguish *Moody* here. The Supreme Court clearly explained in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) that "[w]hen [online] platforms … decide which third-party content … [to] display … they are making expressive choices. And because that is true, they receive First Amendment protection." *Id.* at 720, 740. Regardless of Plaintiff's characterization that he "seeks damages for the manner in which Google administered a paid process," the First Amendment protects Google's editorial discretion in choosing what content to publish or not to publish on internet platforms. (Opp., p. 11.) *Id.* at 728-33, 735-40. Accordingly, each of Plaintiff's claims should be dismissed with prejudice.

**C. Plaintiff's Breach of Contract Claim Should Be Dismissed.**

Plaintiff's arguments in support of his breach of contract claim are pure gamesmanship. On the one hand, Plaintiff disputes whether he is bound by the Contracts[4] Google attached to its Motion to Dismiss, while on the other hand, Plaintiff expressly alleges breach of contract based

[4] To the extent Plaintiff argues that the Court can't consider the Contracts without treating Google's motion as a motion for summary judgment, Plaintiff ignores the well-accepted principle that the Court can consider documents incorporated by reference to a complaint. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 G.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

on terms from those very contracts he disputes. Either Plaintiff is bound by the Contracts[5] or his breach of contract and breach of the implied covenant of good faith and fair dealing claims must be dismissed for lack of an underlying contract. Plaintiff cannot have it both ways. As Plaintiff's breach of contract claim expressly relies on the Contracts, the Court should ignore any argument that Plaintiff is not bound by them, or that the California forum-selection clause therein does not apply.

1. Plaintiff Mischaracterizes The Terms That Apply To Him.

Plaintiff's arguments regarding notice cannot save his breach of contract claim from dismissal. While Plaintiff appears to now identify the provisions Google allegedly breached, it is "'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss[.]'" *Ehmann v. Duke Energy Carolinas, LLC*, 2020 WL 958909, *4 (W.D.N.C. Feb. 27, 2020). Even if considered, identifying the asserted contract provision is only the first step, as that provision must in fact impose the obligation allegedly breached, and the claim should be dismissed if it does not. *See Hall v. YouTube, LLC*, 2025 WL 3265494, *2 (N.D. Cal. Nov. 24, 2025); *Corner Computing Sols. v. Google LLC*, 750 F.Supp.3d 1208, 1215 (W.D. Wash. 2024). None of the identified provisions impose the purported obligations on Google that Plaintiff claims.

***First***, the "Taking action in case of problems" provision of the Google TOS for suspending a Google *Account* simply does not apply here because Plaintiff complains about his GBP listing. They are not the same. This is dispositive, as the GBP-specific content moderation and termination provisions of the Additional GBP TOS do not contain any notice or reason requirement:

**Moderation of your content and other content on the Business Profile**

[5] Plaintiff's argument as to there being any dispute as to which TOS versions govern also has no merit. (Opp., pp. 4-5.) Google attached the TOS versions for both the January 5, 2022 through May 21, 2024 and May 22, 2024 through July 29, 2026 time periods as Plaintiff complains his GBP was suspended on February 16, 2024 and such suspension continued through April 26, 2025. (FAC ¶ 1.)

> … we have the right, but not the obligation, to moderate the content you provide using Business Profile Services. … we may choose not to display your content. ….
>
> ***
>
> **Termination**
> Google reserves the right to wholly or partially restrict, suspend, or terminate your access to, or use of, Business Profile Services if:
> 1. You breach these Terms, any Policies or applicable law(s)....
> 3. Your conduct causes harm or liability to a third party or Google….

(Additional GBP TOS, ECF No. 13-5, at 3, 4-5.)

The Court must read the Contracts in whole and in context. The TOS apply generally to all Google's services, but incorporate the "service-specific additional terms" like the Additional GBP TOS, which are specific to the GBP service and control over the TOS. (*Compare* TOS, ECF No. 13-3, p. 5 and ECF No. 13-4, p. 5 *with* Additional GBP TOS, ECF No. 13-5, p. 3 ("If these Google Business Profile Additional Terms conflict with the Google Terms of Service, these Business Profile Additional Terms will govern for Business Profile Services.").) Properly read, as the "Termination" and "Moderation" provisions of the Additional GBP TOS ***are specific to the GBP service*** (as opposed to the TOS applying to the broader category of Google accounts), the Additional GPBTOS governs. *See FDIC v. BancInsure, Inc.*, 675 F.App'x 666, 670 (9th Cir. 2017) ("a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates"; int. quot. & cit. omit.); Cal. Civ. Proc. Code § 1859 (specific contract provisions control over general).[6] Because the governing provisions of the Additional GBP TOS do not include the asserted "Taking action in case of problems" requirement, the breach of contract claim based on this purported obligation fails. *See Corner*

[6] The Contracts have a California choice of law clause. (ECF No. 13-3, p. 18; ECF No. 13-4, pp. 14-15; ECF No. 13-7, pp. 7-8.)

*Computing Sols.*, 750 F.Supp.3d at 1215-17 (dismissing contract claim because GBP contract did not impose the asserted content moderation obligations on Google).

Even if the general TOS provision were to apply, this still does not save Plaintiff's contract claim because Plaintiff ignores key language that Google will "provide you with advance notice ***when reasonably possible*** … unless doing so would … compromise the operation, integrity, or security of our services." (TOS, ECF No. 13-3, p. 17 and ECF No. 13-4, p. 13.) Plaintiff does not address this reservation of discretion to Google, which shows that advance notice is not absolute but was instead a general statement of intent with Google reserving the discretion to not provide notice if not reasonably possible. *Cf. Hemry v. Google LLC*, 2026 WL 2909299, * 3 (N.D. Cal. Sept. 28, 2026) ("general" and "aspirational" statements as to Google's moderation policies vis-à-vis third party applications were not enforceable). This modifying language confirms that there is no absolute requirement or right for advance notice before the applicable suspension or termination, and that Google retains discretion to determine what is reasonably possible and whether the integrity of its services may be compromised. Hence, Plaintiff cannot state a plausible claim based on the "Taking action in case of problems" provision of the Google TOS that Plaintiff now mistakenly relies on in the Opposition. Moreover, Plaintiff *was* on notice of the suspension for violating Google's policies, as the FAC asserts Plaintiff appealed that decision. (FAC ¶ 5.) Hence, the claim would still fail under Plaintiff's misinterpretation of the "Taking action in case of problems" provision.

***Second***, the VB Policies also do not provide the purported obligation Plaintiff contends. Instead, the VB Policies state:

> **What happens if you violate our policies**
> If you violate our policies, you may be subject to temporary or permanent revocation of your business's verification status which will result in a partial or complete inability to advertise on Google.

> Google will notify you by email if this happens. If the violation is fixable, the email will explain the changes you'll need to make before you can resume advertising.

(VB Policies, ECF No. 13-11, p. 5.) That provision provides no promise as to what Google will do before it temporarily or permanently revokes a business's verification status. Instead, it simply provides that Google "*will notify* you by email if this happens." (*Id.* (emphasis added).) As such, this other contract theory fails as well. *See Mercola.com, LLC v. Google LLC*, 2023 WL 5680112, *4 (N.D. Cal. Sept. 4, 2023) (dismissing contract claim because the terms of service for YouTube did not impose the asserted obligation on Google to conduct a particular form of review before removing content).

***Third***, Plaintiff's claims still fail as these contracts do not impose obligations on Google. *Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056, 1064 (N.D. Cal. 2016) (applying California law and finding "while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations' on the part of that provider"; cit. omit.); *Joude v. WordPress Found.*, 2014 WL 3107441, *4-5 (N.D. Cal., July 3, 2014) ("cannot predicate a breach of contract claim on a defendant's terms of service where those terms did not commit the defendant to performing any particular action."). The Court should ignore Plaintiff's citationless argument to the contrary.

Accordingly, Count I must be dismissed with prejudice.

### D. The Implied Covenant of Good Faith And Fair Dealing Claim Fails.

Plaintiff's implied covenant of good faith and fair dealing argument is a repackaging of his breach of contract argument. Plaintiff claims that the Contracts give Google "discretion to suspend upon specified events, preceded by a commitment to describe the reason and give an opportunity to fix the problem[.]" (Opp., p. 12.) As Google has explained above, the Contracts do not require any such prior notice in order for it to exercise its discretion provided for in the Contracts. Because

"[t]he implied covenant … will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself[,]" the Court must dismiss Count II with prejudice. *Prager Univ. v. Google LLC*, 85 Cal.App.5th 1022, 1039 (2022) (YouTube TOS defeated claim based on removing content (int. quot. omit.)); *Hall*, 2025 WL 3265494 at *3 (dismissing implied covenant claim challenging plaintiff's account suspension given existence of YouTube TOS).

### E. Plaintiff Fails to State a Claim For Promissory Estoppel.

Plaintiff's promissory estoppel argument again mischaracterizes the law. Plaintiff claims that his promissory estoppel claim may be pleaded in the alternative since "Google denies that any contract obligated it with respect to the matters alleged." (Opp., p. 12.) However, Plaintiff's promissory estoppel claim fails because such a claim is based on the identical conduct of Plaintiff's breach of contract claim. (*Compare* FAC ¶¶ 57-61 *with id.* ¶¶ 69-72.) Therefore, the mere existence of the contract, regardless of whether Google and Plaintiff have different understandings as to the obligations the Contracts impose, bars Plaintiff's promissory estoppel claim.[7] *See Odinma v. Aurora Loan Servs.*, 2010 WL 2232169, *10 (N.D. Cal. June 3, 2010); *JMP Sec. LLP v. Altair Nanotech. Inc.*, 880 F.Supp.2d 1029, 1041 (N.D. Cal. 2012).

### F. Plaintiff Fails to State a Claim Under the North Carolina Unfair and Deceptive Trade Practices Act.

The Court need not reach Plaintiff's arguments regarding the North Carolina Unfair and Deceptive Trade Practices Act ("***NC-UDTPA***") because it is barred by the choice of law provision in the Terms. *See United Dominion Indus., Inc. v. Overhead Door Corp.*, 762 F. Supp. 126, 128 (W.D.N.C. 1991) (dismissing NC-UDTPA claim because Texas law governed); *Rojas-Lozano*,

---

[7] As Plaintiff concedes (Opp., p. 13), if North Carolina law applies, the promissory estoppel claim should also be dismissed as North Carolina does not recognize a claim for promissory estoppel. *Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 543 (1987) (per curiam).

159 F.Supp.3d 1101, 1107, 1112 (N.D. Ca;. 2016) (California choice of law clause in Google's TOS barred Massachusetts UDTPA claim); *see also Trump v. Twitter Inc.*, 602 F.Supp.3d 1213, 1226-27 (N.D. Cal. 2022) (California choice of law clause in terms of service barred Florida UDTPA claim).

Even if the choice of law clause did not bar Plaintiff's NC-UDTPA claim, it still fails. Plaintiff claims that "[d]eception in the circumstances surrounding a breach can supply" the aggravating circumstances required for an NC-UDTPA claim. (Opp., p. 13.) However, the supposed substantial aggravating circumstances Plaintiff describes are still the basis of his breach of contract claim. Plaintiff identifies the following aggravating circumstances: "an accusation of 'deceptive content and behavior' that identified no deceptive act and offered no path to cure; a sequence of shifting policy labels on a single continuous suspension; repeated demands for materials already supplied and accepted; and a written confirmation of successful verification, followed five days later by a contradictory ultimatum from Google's own systems, while the suspension continued for 164 more days." (Opp., p. 13.) The Court need only look to Plaintiff's own allegations for breach of contract to find that the NC-UDTPA and breach claims are based on identical conduct:

> 60. Google breached that contract by, among other things: suspending the Google Business Profile on February 16, 2024 with a label but no described reason specific enough to clarify or address, and no opportunity to do so,… administering verification so that its own written confirmation of successful completion was nullified within five days by its own contrary demand; maintaining the suspension for 164 additional days after confirming successful verification; repeatedly demanding materials already supplied and already accepted; never identifying, in any notice, what specifically needed to change before advertising could resume, contrary to the notice process described in the terms; and failing to administer the verification and appeal process it described.

(FAC ¶ 60.) As such, Plaintiff's repackaging of his breach of contract claim cannot state a claim under the NC-UDTPA, and Count IV must be dismissed. *See Broussard v. Meineke Discount*

*Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) ("'[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the NC-UDTPA].'").

### G. Plaintiff Fails to State a Claim under California's Unfair Competition Law.

Google's Motion to Dismiss established that (1) since Plaintiff's "fraudulent business act[]" allegation sounds in fraud, Plaintiff must satisfy Rule 9(b)'s heightened pleading standard, which Plaintiff's conclusory allegations failed to do; and (2) Plaintiff's allegation that Google engaged in an unfair business act does not meet either test of what California courts deem "unfair" under the California Unfair Competition Law. (Motion, pp. 24-25.) Plaintiff simply responds with more conclusory allegations that (1) since other allegations in the FAC, outside of his claim under the California Competition Law, "state the who, what, when, and how" then his claim satisfies Rule 9(b) and (2) the utility of a 435-day suspension is weighed against the harm to Plaintiff. (Opp., p. 14.) However, the entirety of Plaintiff's claim is that "Google's contradictory and opaque administration of the paid verification and advertising relationship, as alleged above, constituted unfair and/or fraudulent business acts or practices[.]" (FAC ¶ 81.) The Court cannot accept such a conclusory allegation, and Count V should be dismissed with prejudice. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (affirming dismissal of California Unfair Competition Law claim where plaintiff "failed to plead his averments of fraud with particularity"); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, (2006) ("[W]e will affirm a judgment of dismissal where the complaint fails to allege facts showing that a business practice is unfair, unlawful or fraudulent.").

### H. The FAC Should be Dismissed with Prejudice.

The Court should also deny Plaintiff's request for leave to amend (Opp., pp. 14-16) and instead dismiss the FAC with prejudice because further amendment would be futile. Plaintiff has

already amended his complaint once, and any further amendment is futile here because the deficiencies with the FAC are legal rather than factual. *See Hunter v. N.C. Dep't of Pub. Safety*, 2021 WL 5761088, at *2 (W.D.N.C. Dec. 3, 2021) ("The Court will dismiss this action with prejudice because the Plaintiff was provided the opportunity to amend the Complaint once, and further amendment would be futile."). No additional fact allegation can supply an obligation that the Contracts do not contain, transform a discretionary content-moderation decision expressly authorized by the Parties' Contracts into an actionable tort, or convert Google's exercise of its editorial judgment into something outside the protections of the First Amendment and Google's Section 230 immunity. Accordingly, the FAC is due to be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons and for those set forth in Google's Motion to Dismiss, Google respectfully requests that the Court dismiss Plaintiff's First Amended Verified Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted this 13th day of October, 2026.

*s/ Colin D. Dailey*
Colin D. Dailey (NC Bar No. 54408)
Counsel for Defendant Google LLC
BRYAN CAVE LEIGHTON PAISNER LLP
301 S. College Street, Suite 2150
Charlotte, NC 28202
Tel: (704) 749-8950
E-Mail: colin.dailey@bclplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all registered useres, and I served a copy on *pro se* Plaintiff by U.S. Mail and Email as follows:

Yehonatan Kapach
13929 Daltrey Lane
Charlotte, NC 28277
yklocks@gmail.com

This 13th day of October, 2026.

*s/ Colin D. Dailey*
Colin D. Dailey